IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL DAVID O'NEAL,
     Plaintiff,

vs.                                   Case No. 5:08cv332/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the decision of the Commissioner denying DIB and SSI benefits is not supported by substantial evidence; the court therefore recommends that the decision be reversed and remanded for further proceedings.

I.    PROCEDURAL HISTORY

Plaintiff's SSI and DIB applications were denied initially (Tr. 24, 60–63, 298, 303–06)[1] and on reconsideration (Tr. 23, 53–55, 297, 299–302).  On February 29, 2008, following a hearing held on February 7, 2008, an administrative law judge ("ALJ") rendered a decision in which she found that Plaintiff was not under a "disability" as defined in the Act (Tr. 16–22).  On September 5, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 2–4), making the decision of the ALJ the "final decision" of the Commissioner and subject to judicial review in this court under 42 U.S.C. § 405(g).  Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.    FINDINGS OF THE ALJ

In her February 29, 2008, decision denying benefits the ALJ made the following findings (Tr. 18–22):

1)    Plaintiff met the insured status requirements of the Act through March 31, 2008.

2)    Plaintiff has not engaged in substantial gainful activity since October 1, 2005, his amended alleged onset date[2] (20 C.F.R. §§ 404.1520(b), 404.1571, *et seq*., 416.920(b) and 416.971, *et seq*.[3]).

3)    Plaintiff has the following severe impairments: history of tarsal coalition with posterior tibial tendonitis of the left foot; status-post triple arthrodesis of the left foot; status-post fusion of calcaneocuboid joint of the left foot; and mild lumber degenerative disc disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

---

[1]  All references to "Tr." refer to the transcript of Social Security Administration record filed on January 28, 2009 (Docs. 12, 13).

[2]  Thus the time frame relevant to Plaintiff's claim for DIB is October 1, 2005 (amended alleged onset date) through March 31, 2008 (date last insured).  The period relevant to his SSI claim is essentially the same—October 1, 2005 through February 29, 2008 (date of issuance of the ALJ's decision).  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

[3]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereafter citations in this Report and Recommendation should be considered to refer to the appropriate parallel provision, unless otherwise noted.  The same applies to citations of statutes or regulations found in quoted court decisions.

4)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5)     Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he can perform no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds.[4]  He must also avoid vibration and hazards.

6)     Plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7)     Plaintiff was born on June 5, 1976.  On his amended alleged disability onset date he therefore was twenty-nine years of age, which is defined as a younger individual (20 C.F.R. §§ 404.1563 and 416.963).

8)     Plaintiff has a limited education, and he is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9)     Transferability of jobs skills is not material to the determination of disability.  The Medical-Vocational Rules ("the grids"), used as a framework for decisionmaking, support a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills (*see* Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10)    In light of Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff is able to perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).

---

[4]  Light work is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and is the result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her/his previous work, "but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.     PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY; OTHER INFORMATION

### A.      Personal and Employment History

At the administrative hearing Plaintiff testified that he was born with flat feet and that his feet have given him trouble his entire life.  Plaintiff has prior work experience building houses.  He stopped working in October 2005 due to foot pain and had surgery on his left foot in November

2005. The pain lessened after surgery, but the foot did not heal properly so Plaintiff underwent a second surgery in October 2006. Plaintiff testified that since the second foot surgery he has experienced severe pain, which medication has not eased. He currently takes no prescription medications. In addition to chronic, severe foot pain, Plaintiff reported that he has severe back, leg, and knee pain related to the problems with his foot. Plaintiff walks with a cane to help keep weight off his left foot. He estimated that he could stand for ten to fifteen minutes at a time; Plaintiff also indicated at the hearing that sitting more than fifteen minutes is uncomfortable.

B.    Medical History

At the request of Vocational Rehabilitation, Michael X. Rohan, M.D., examined Plaintiff on April 14, 2005 (Tr. 232). Dr. Rohan observed obvious valgus deformities and near rocker-bottom feet bilaterally. The posterior tibial tendon appeared to be intact but stretched. Radiographs showed flattening of the talus, with a spur over the anterior talus and bilateral degenerative changes in the mid tarsal area. Dr. Rohan recommended that Plaintiff consult a foot and ankle specialist.

Plaintiff was seen on referral by C.F. Peebles, D.P.M., in July 2005 (Tr. 278–79). Dr. Peebles noted that Plaintiff's height was 6'1" and his weight was two hundred and eighty pounds. On physical examination Dr. Peebles found collapse at the medial aspect of the arch of the left foot with prominence of the navicular tuberosity. Pain was appreciated with palpation overlying the navicular tuberosity, as well as in the sinus tarsi region. There were limitations in range of motion of the heel, and Plaintiff ambulated with a heel-to-toe type gait with significant lateral collapse of the foot (Tr. 279). Radiographs revealed no fractures or dislocations, with some irregularity at the navicular/calcaneal region. There was no clear coalition appreciated. Dr. Pebbles' assessment was "1. Tarsal coalition possible calcaneonavicular bar on the left. 2. Posterior tibial tendinitis on the left" (*id.*). Dr. Peebles recommended diagnostic testing to assess the possible tarsal coalition and use of a brace to increase functional support. He also discussed surgical intervention. Shortly after Dr. Peebles' examination Plaintiff underwent a CT scan of the left foot, which revealed a bony protuberance and apparent pseudoarthrosis and possible variation along the inferior aspect of the calcaneus and talus (Tr. 290). In early August 2005 Dr. Peebles saw Plaintiff again and assessed him with tarsal coalition of the left foot; Dr. Peebles recommended an MRI of the left foot to evaluate

it for fibrotic tissues (Tr. 277).  An MRI was obtained, and the impression of the reviewing physician was talo-calcaneal coalition, fibrous type (Tr. 274).  Reexamining Plaintiff in mid-August 2005, Dr. Peebles assessed him as having calcaneonavicular coalition with degenerative arthritis of the left foot (Tr. 275).  Dr. Peebles  recommended surgery and noted that Plaintiff "needs to be off his l[eft] foot for 1 year due to foot surgery" (Tr. 273).

Dr. Peebles performed triple arthrodesis surgery on Plaintiff's left foot on November 11, 2005 (*see* Tr. 233–53).  Dr. Peebles' impression post-surgery was tarsal coalition talocalcaneal and degenerative arthritis of the left lower extremity (Tr. 245).  Plaintiff was discharged from the hospital with instructions to bear no weight on his left foot and to use crutches or a walker.  He was given antibiotics and medications for pain and to prevent deep vein thrombosis.  Later in November 2005 Dr. Peebles again stated that "Plaintiff will not be able to work for 1 year due to foot surgery on 11/11/05" (Tr. 270).  When Dr. Peebles examined Plaintiff on December 6, 2005, he noted that Plaintiff reported that he was not experiencing pain and was not taking any medication for pain (Tr. 269).  Dr. Peebles recommended the use of a nonweightbearing cast.

At a follow-up visit in January 2006, Dr. Peebles noted Plaintiff's report of decreased foot pain (Tr. 268).  An x-ray revealed continued consolidation without shift, and the fixation was intact. Dr. Peebles recommended immobilization of the left foot in a moon boot and continued Plaintiff's nonweightbearing status.  Plaintiff's next visit to Dr. Peebles was in early February 2006, when Plaintiff reported having no significant pain in the surgical area (Tr. 267).  Dr. Peebles detected pain with palpation at the lateral aspect at the calcanealcuboid joint but found no crepitation, dislocation, or dislocate ability.  An x-ray revealed no fractures or dislocations, but incomplete consolidation was noted.   Dr. Peebles advised limited weightbearing activity, with possible progression to full weightbearing status in one month.  In early March 2006, Plaintiff reported to Dr. Peebles that had been experiencing continued pain in his left foot (Tr. 266).  An x-ray show gapping at the lateral aspect, with no dislocation or dislocate ability.  On physical examination, pain was appreciated laterally, although there was no crepitation.   Dr. Peebles' impression was delayed union calcanealcuboid joint of triple arthrodesis of the left foot.   Dr. Peebles recommended use of a bone stimulator device to promote mending due to Plaintiff's tobacco history and delayed healing.

Plaintiff returned to see Dr. Peebles on April 4, 2006, reporting continued pain at the lateral aspect of his left foot (Tr. 265). Dr. Peebles noted that Plaintiff had been active on his feet. Physical examination revealed that the left foot was healing well, with no signs of infection, crepitation, dislocation, or dislocate ability, but an x-ray of the left foot revealed gapping at the calcanealcuboid joint. Dr. Peebles' impression was delayed union calcanealcuboid joint. He recommended continuation of current weightbearing activity. Dr. Peebles saw Plaintiff again on April 25, 2006, when Plaintiff reported that he continued to experience pain at the lateral aspect of his left foot (Tr. 264). Dr. Peebles noted that an x-ray of the left foot showed good apposition of the medial aspect with no loosening but gapping at the lateral aspect at the calcaneocuboid joint.[5] Dr. Peebles again recommended use of a bone stimulator, which Plaintiff had not yet obtained, and discussed the possibility of additional surgery.

In a May 16, 2006, entry Dr. Peebles noted that Plaintiff continued to report pain in his left foot (Tr. 263). On physical examination, Dr. Peebles elicited pain with palpation at the calcanealcuboid joint both laterally, as well as the superior and dorsal portions. Radiographs of the left foot showed continued separation at the calcanealcuboid joint. Dr. Peebles' impression was nonunion calcanealcuboid joint left with degenerative changes. Dr. Peebles recommended a new moon boot for ambulation and again mentioned the possibility of additional surgery. He noted that Plaintiff would "likely have a year's recovery from the time of his surgery which will definitely extend his current disability" (*id.*). In a May 16, 2006, letter, Dr. Peebles—who was relocating to another area—referred Plaintiff to Shayne Jensen, D.P.M., for further evaluation and possible surgery (Tr. 262).

In October 2006 Plaintiff complained to Dr. Jensen of left foot pain, specifically identifying the area of the calcaneocuboid joint, and some numbness and swelling (Tr. 169). On physical examination Dr. Jensen made findings consistent with Plaintiff's complaints. Dr. Jenson indicated that these findings possibly were secondary to an entrapment and noted Plaintiff's history of triple arthrodesis. On October 10, 2006, Dr. Jensen performed a fusion of the calcaneocuboid joint with bone graft on Plaintiff's left foot. The pre and post surgery diagnoses were nonunion of

[5] The record actually refers to the right foot, in apparent error.

calcaneocuboid joint. Dr. Jensen gave Plaintiff strict instructions about staying on absolute nonweightbearing status. He also instructed Plaintiff that he must not smoke, as smoking could interfere with bone and wound healing.

On June 20, 2007, Plaintiff presented to Jalal K. Sidani, D.P.M. Plaintiff's chief complaint at that time was being unable to walk on his left foot (Tr. 165). Plaintiff indicated that the foot was unstable and rotated outward and that he was experiencing a great deal of pain, for which he occasionally used Motrin.[6] Plaintiff's past medical history included surgery on the left foot, back problems, arthritis, foot and leg cramps, swelling in the ankles and feet, and tired feet. Dr. Sidani reported that Plaintiff ambulated with the assistance of a cane; that the left foot had some erythema and edema; that Plaintiff's sharp-and-dull and vibratory sensations were slightly diminished on the left foot; and that there was flattening of the rear of the left foot with valgus and genu valgum. Reviewing an x-ray of Plaintiff's left foot, Dr. Sidani noted the presence of a large screw through the talocalcaneal joint, fusion of the talonavicular joint, and triple arthrodesis which apparently had failed on the lateral aspect and had been repaired by placing a plate into the calcanealcuboid joint. Dr. Sidani advised Plaintiff that no additional surgery was indicated at that time. He assessed Plaintiff with pain in the limb/pronation and history of triple arthrodesis. Dr. Sidani instructed Plaintiff on how to ambulate properly with the assistance of a cane and advised the use of a brace, custom-molded to his foot and ankle (Tr. 166).

On September 4, 2007, at the request of Vocational Rehabilitation, Todd S. Crawford, M.D., evaluated Plaintiff, who presented with complaints of right leg pain and pain, stiffness, burning, and aching in the lower back for three weeks (Tr. 157). Plaintiff described his symptoms as being, at their best, 8 on a scale of 1 to 10 and, at their worst, 10 on a scale of 1 to 10. Dr. Crawford noted that Plaintiff was obese and in a deconditioned state. He examined Plaintiff in standing, sitting, and supine positions and noted that an x-ray showed mild disc space narrowing at L4-5 and L5-S1. Dr. Crawford's impression was back and right leg pain (Tr. 155). Dr. Crawford advised an MRI of the lumbar spine, which was obtained September 7, 2007. The MRI report indicated that there were no

---

[6] Motrin, or ibuprofen, is a nonsteroidal analgesic and anti-inflammatory agent. *See* Dorland's Illustrated Medical Dictionary at 815 (28th ed. 1994).

large lumbar herniations but that there was mild disc degeneration at several levels, most evident from L3 to S1 (Tr. 158–59). Minimal disc bulging was noted at a few levels, but there was no evidence of significant neural deformity. Dr. Crawford prescribed Motrin and Flexeril[7] for pain relief. Plaintiff returned to Dr. Crawford on September 11, 2007, for a follow-up examination (Tr. 154). Dr. Crawford noted that Plaintiff appeared to be in discomfort, including exhibiting pain with sitting and tenderness over the lower lumbar region. Strength, sensation, and reflexes were grossly normal. Dr. Crawford also noted that the September 7, 2007, MRI was essentially normal. Dr. Crawford's impression was back and right leg pain which was largely myofascial. Dr. Crawford advised physical therapy and a return visit in one month.

     C.     Other Information Within Plaintiff's Administrative File

The administrative file contains a Physical RFC Assessment dated January 6, 2006, that was prepared by a non-examining State agency medical consultant (Tr. 215–22). The evaluator opined that as of November 1, 2006, Plaintiff would be able to occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and would have no limitations with respect to pushing and/or pulling. Plaintiff would be able to occasionally climb ramps or stairs but never climb ropes, ladders, or scaffolds. He could balance, stoop, kneel, crouch and crawl. He would have no manipulative, visual, or communicative limitations. Other than avoiding concentrated exposure to vibration and hazards, Plaintiff also would have no environmental limitations. On April 24, 2006, a second non-examining medical consultant reviewed Plaintiff's records and prepared a Physical RFC Assessment with a projected date of November 30, 2006 (Tr. 207–14). Noting Plaintiff's triple arthrodesis surgery in November 2005 and March 2006 assessment of delayed union of the calcanealcuboid joint (Tr. 208), the consultant opined that as of November 30, 2006, Plaintiff would be able to occasionally lift twenty pounds, frequently lift ten pounds, and stand and/or walk for about six hours in an eight-hour workday. Plaintiff would be able to sit about six hours in an eight-hour workday

---

    [7] Flexeril is a muscle relaxant used to relieve muscle spasms. *See* Physicians Desk Reference Pocket Guide to Prescription Drugs at 317, 532 (4th ed. rev. 2000).

and would have no limitations with respect to pushing and/or pulling. He would have no postural, manipulative, visual, communicative, or environmental limitations.

## V.    DISCUSSION

In his memorandum in support of reversal, Plaintiff first points to the ALJ's statements in her decision that she gave the opinions of the two non-examining medical consultants "considerable weight" and that the opinions were "incorporated into the residual functional capacity" determination (Tr. 19, 20). Plaintiff argues that the Assessments are not sufficient to support the ALJ's RFC finding that he retains the ability to perform light work.[8] According to Plaintiff, a non-examining medical consultant's assessment is entitled to little weight and, taken alone, cannot constitute substantial evidence in support of the Commissioner's decision; moreover, in this instance the consultants' assessments were unacceptably speculative, having been prepared in January and April 2006 with projected effective dates in November 2006. Plaintiff additionally argues that, although it is required by SSR 96-8p,[9] the ALJ's decision does not include an adequate narrative discussion describing how the evidence supports her conclusion that Plaintiff is able to stand for the majority of each workday, an ability which SSR 83-10 states is necessary to perform light work.[10] Plaintiff also contends that the ALJ failed to address Dr. Peebles' opinion that Plaintiff would be unable to

---

[8]  Plaintiff characterizes this argument as asserting fifth-step error. Although the RFC determination applies at both steps four and five of the sequential analysis, the Commissioner must initially establish a claimant's RFC at the fourth step. In light of the nature of Plaintiff's argument and because it makes more sense to address the RFC determination in connection with the step at which the ALJ first articulated it, the court views and treats Plaintiff's argument as asserting error at the fourth step.

[9]  Social Security Ruling 96-8p requires the ALJ, in determining a claimant's RFC, to "include a narrative discussion describing how the evidence supports each conclusion" and to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p.

[10]  Social Security Ruling 83-10 concerns the ALJ's use of the grids at step five of the sequential analysis; the assistance of a vocational expert therefore is not implicated. In this case, as previously noted, the court treats Plaintiff's argument regarding the ALJ's RFC determination as a step four challenge. Furthermore, the ALJ used the grids only as a framework for her decisionmaking; she additionally obtained testimony from a vocational expert to make her step five finding. Social Security Ruling 83-10 therefore appears to have no direct application to Plaintiff's case. To the extent Plaintiff relies on SSR 83-10 to define some of the requirements of light work, however—including that light work requires "being on one's feet up to two-thirds of a workday [and] the full range of light work requires standing or walking, off an on, for a total of approximately 6 hours of an 8-hour workday"—the court considers it. The court additionally notes, and considers, that SSR 83-10 further provides that work is also deemed to be in the light "category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls . . . . " SSR 83-10.

Case No. 5:08cv332/RS/EMT

work for one year after his second surgery. Responding in opposition, the Commissioner notes that it is the ALJ's responsibility—and not that of a physician or other medical source—to determine a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). The Commissioner contends that the ALJ's RFC assessment was not based solely on the opinions of the non-examining medical consultants but also on the objective medical evidence and the limited credibility of Plaintiff's subjective testimony. According to the Commissioner, all of this evidence, taken together, constitutes substantial evidence in support of the ALJ's RFC determination. The Commissioner further argues that, as explained in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and SSR 83-10, light work does not necessarily require the ability to stand for the majority of each workday; rather, an individual may be able to perform light work if he can sit most of the time and push and pull foot or hand controls.

As an initial matter, the court notes that the Commissioner apparently concedes (*see* Doc. 20 at 10 n.3) that the Physical RFC Assessment dated January 6, 2006, was not prepared by an "acceptable medical source" who was qualified to render an opinion as to Plaintiff's ability, despite his impairments, to perform work-related activities. *See* 20 C.F.R. §§ 404.1513(a)(c), 416.913(a)(c). The court agrees that the evaluator who prepared the January 6, 2006, Assessment is not properly considered an acceptable medical source, as the Assessment bears the name of the evaluator but not her credentials and there is nothing else in the record to establish her qualifications. Even if it were shown that the January 6, 2006, Assessment had been prepared by an acceptable medical source, both this Assessment and the April 24, 2006, Assessment reflect the respective evaluator's opinion of Plaintiff's abilities some six to ten months after—rather than at the time—the Assessments were prepared. When the January 6, 2006, Assessment was prepared, Plaintiff's medical records suggested that the November 2005 surgery on his left foot had been successful and indicated that Plaintiff was progressing well and experiencing little pain; when the April 24, 2006, Assessment was prepared, Plaintiff's medical records showed that he was experiencing some pain in his left foot and that Dr. Peebles had just identified the delayed union in the calcanealcuboid joint. Both Assessments were completed without the benefit of several additional months of relevant medical records, including Dr. Peebles' first mention on April 25, 2006, that additional surgery might be needed to

address the delayed union of the calcanealcuboid joint; his view in May 2006 that Plaintiff would "likely have a year's recovery from the time of his [second] surgery which will definitely extend his current disability" (Tr. 263); or Dr. Jensen's October 2006 fusion and bone graft surgery involving the calcaneocuboid joint of Plaintiff's left foot. In short, one of the Assessments is not properly documented as coming from an acceptable medical source and both of the Assessments are speculative and based on a record that did not contain evidence relevant to a full and proper evaluation of Plaintiff's ability to perform work-related activities. For these reasons, the court concludes that the January 6, 2006, and April 24, 2006, Physical RFC Assessments are entitled to little weight in connection with determining Plaintiff's RFC for all of the relevant period, noted above to be October 1, 2005, through February 29, 2008/March 31, 2008.

The court next turns to the two other components of the record that the Commissioner contends support the ALJ's RFC determination, the medical record and Plaintiff's discounted pain testimony. As previously mentioned, the ALJ determined that Plaintiff retains the RFC to perform light work, limited by the ability to perform no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds; he must also avoid vibration and hazards. In the court's view, the medical record is inadequate to support this finding. As set forth above in greater detail, Dr. Peebles' medical records immediately prior to the November 11, 2005, surgery reflect his diagnosis of calcaneonavicular coalition with degenerative arthritis of the left foot. Post-surgery, Dr. Peebles' diagnosis was tarsal coalition talocalcaneal and degenerative arthritis of the left lower extremity, and he opined that "Plaintiff will not be able to work for 1 year due to foot surgery on 11/11/05" (Tr. 270). Plaintiff remained on nonweightbearing status through January 2006, moving to limited weightbearing status in early February 2006 and full weightbearing status in March 2006. Dr. Peebles diagnosed delayed union calcanealcuboid joint of triple arthrodesis of the left foot in March 2006. And in April 2006 and May 2006 Dr. Peebles discussed the possibility of additional surgery on Plaintiff's left foot, noting in May 2006 that Plaintiff would "likely have a year's recovery from the time of his surgery which will definitely extend his current disability" (Tr. 263). Dr. Jensen performed a fusion of the calcaneocuboid joint with bone graft on Plaintiff's left foot in October 2006. There are no additional medical records until June 20, 2007, when Dr. Sidani assessed

Plaintiff with pain in the limb/pronation and history of triple arthrodesis but advised that no additional surgery was indicated.

The evidence outlined above is not sufficient to support the conclusion that from the time of Plaintiff's first surgery in November 2005 until after his second surgery in October 2006 he was able to perform a "good deal of walking or standing"—in other words, able to walk or stand up to six hours per workday—as outlined in 20 C.F.R. §§ 404.1567(b), 416.967(b), and SSR-83-10, even with the postural and environmental limitations imposed by the ALJ. Moreover, Dr. Sidani's June 2007 report, in which he indicated that Plaintiff required the use of a cane to ambulate and should use a special brace, likewise does not support the conclusion that Plaintiff would be able to walk or stand a significant part of each workday. Furthermore, the record is devoid of any RFC assessments (other than those previously discounted by the court) which show that Plaintiff's ability to walk and stand enabled him to perform even a limited range of light work. A limited ability to stand and walk, however, may not preclude the capacity to perform light work. As the Commissioner contends, 20 C.F.R. §§ 404.1567(b) and 416.967(b), and SSR 83-10 instruct that light work does not necessarily require the ability to stand for the majority of each workday but rather may also include work that requires the individual to sit most of the time but be able to push and pull foot or hand controls. While with his restrictions Plaintiff might have been able to operate leg controls during at least part of the time relevant to his SSI and DIB claims, thus permitting him to perform a limited range of light work, there simply is not adequate medical evidence in the record on which to base such a finding.

The third component of the record that the Commissioner submits supports the ALJ's RFC determination is Plaintiff's pain testimony, which the Commissioner contends the ALJ properly discounted. The ALJ concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was not fully credible, and the court agrees. The records and opinion of Dr. Crawford—who indicated that an x-ray and MRI of Plaintiff's lumbar spine were essentially normal and that Plaintiff's leg and back pain was myofascial in nature and could be addressed with Motrin and Flexeril—do not support Plaintiff's allegations of severe leg and back pain. Moreover, Plaintiff acknowledged at the hearing that he used no pain medications, an

acknowledgment that supports the ALJ's conclusion that Plaintiff's complaints of intractable left foot pain were not entirely credible. *See* <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1226 (11th Cir. 2002) (holding that limited use of pain medication can support an ALJ's decision to discredit subjective testimony). The court therefore is satisfied that the ALJ was entitled to discount Plaintiff's allegations of disabling pain, at least to the extent the allegations were not consistent with the evidence outlined above. *See* <u>Arnold v. Heckler</u>, 732 F.2d 881, 884 (11th Cir. 1984) (noting that it is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."). The ALJ's credibility finding, however, is not sufficient by itself to support her RFC determination.

VI.     CONCLUSION

       In summary, the court concludes that in making her RFC determination the ALJ was not entitled to accord great weight to the January 6, 2006, and April 24, 2006, Physical RFC Assessments prepared by the non-examining medical consultants. Additionally, the current medical evidence of record is not sufficient to support the conclusion that during the period relevant to his claims Plaintiff retained the ability to walk or stand, as outlined in 20 C.F.R. §§ 404.1567(b), 416.967(b), and SSR-83-10, even with the postural and environmental limitations imposed by the ALJ, or the ability to operate leg controls. Moreover, although the ALJ properly discounted Plaintiff's allegations of disabling pain, this finding alone is not sufficient to support her conclusion that Plaintiff could perform a limited range of light work. Because the ALJ's RFC determination is not supported by substantial evidence, this matter should be remanded to the Commissioner for further proceedings. On remand, the Commissioner should reassess Plaintiff's RFC, obtaining as may be necessary additional medical evidence from examining or treating physicians regarding Plaintiff's left foot impairment and RFC assessments prepared by acceptable medical sources that are based on medical records which encompass the entire relevant period. The ALJ should then complete the sequential analysis as appropriate.

       Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner be ordered

to **REMAND** this case to the administrative law judge for further proceedings consistent with this Report and Recommendation, and that the clerk be directed to **CLOSE** this file.

At Pensacola, Florida this <u>31st</u> day of December 2009.


<u>s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**